352 P.2d 644

John BURROUGHS, Plaintiff-Appellee, Cross-Appellant and Cross-Appellee,

v.

Odis GARRETT, Defendant-Appellant, Royal Tire Service of Amarillo, Inc., and Robert E. Wallen, Intervenors-Appellants and Cross-Appellees,

H. D. King, d/b/a King Brothers Grain & Seed Company, Intervenor, Cross-Appellant and Cross-Appellee.

No. 6602.

Supreme Court of New Mexico.

Feb. 3, 1960.

Rehearing Denied June 8, 1960.

Hartley, Buzzard & Patton, Clovis, for Odis Garrett, appellant.

Mears & Mears, Fred Boone, Portales, for John Burroughs, appellee, cross-appellant and cross-appellee.

Smith, Smith & Tharp, Clovis, for King Brothers Grain & Seed Co., cross-appellant and cross-appellee.

COMPTON, Justice.

Appellee Burroughs instituted this action in replevin to recover a Peterbilt tractor, upon which he held a chattel mortgage, and a Freuhauf trailer, which had been leased by him. Incidentally, when the units were repossessed by the sheriff, the trailer was loaded with grain of the value of approximately $1,200.

Appellant Garrett answered, alleging ownership of both vehicles. Appellant, Royal Tire Service of Amarillo, Inc., intervened, asking judgment of $1,093.44, balance due on the sale of 8 tires to Garrett, and which had been placed on the tractor; or, in the alternative, possession of the tires. Appellant Wallen also intervened, asking judgment of $3,268, the balance due on the sale of 19 tires, wheels, and tubes to Garrett, and which had been placed on the units; or, in the alternative, possession of the tires, wheels, and tubes. Appellant, King Brothers Grain and Seed Company, intervened, alleging ownership of the grain and seeking damages, actual and punitive, against Burroughs for the alleged unlawful detention of the grain. Issue was joined on all matters of substance. At a hearing, the trial court held for Burroughs and against Garrett, Royal Tire Service, and Wallen, but in favor of King Brothers Grain and Seed Company, for actual damages only. All parties being dissatisfied by the ruling have appealed. Due to various appeals and cross-appeals, it will simplify the matter to refer to the parties as Burroughs, Garrett, Royal Tire, Wallen, and King.

In May, 1956, Burroughs sold the tractor to one George Hunt, and to secure a note for part of the purchase price, Hunt executed a chattel mortgage on the tractor in favor of Burroughs. The balance of the purchase price was $5,000, which amount was to be paid in monthly installments of $300. Burroughs also leased the trailer to Hunt for a term of one year from September 25, 1956 to September 25, 1957. The lease also provided for monthly rental payments. Hunt defaulted in the monthly installments, both on the tractor and trailer, and it is equally clear that Garrett has made no payments whatever to Burroughs.

The record discloses further that after Hunt took possession of the tractor and trailer, they were immediately taken out of New Mexico by him. In some manner, Garrett acquired possession of the equipment from Hunt in Louisiana in the Fall of 1957, at which time Garrett contacted Burroughs by phone in an effort to purchase the equipment. Burroughs refused to discuss the question until the equipment was delivered in Portales; however, he did agree that Garrett might use the equipment for the sole purpose of making one trip to California, after which Garrett was to return the equipment to him.

Garrett's failure to return the equipment as agreed resulted in this action. On July 12, 1958, this action was instituted to repossess the equipment, but its whereabouts remained unknown until January 7, 1959, when it was located in Fort Sumner. Meanwhile Garrett had continued using it.

The issue between Burroughs and Garrett relates to the question of the ownership

of the tractor and trailer, both claiming the equipment. The issue was one of fact and as usual there was a conflict in the evidence. The trial court found that the tractor and trailer were the same tractor and trailer which Burroughs had previously sold to Hunt, and that Hunt was in default. While there is evidence that the motor number on the tractor had been changed, and the trailer bore a different number when repossessed, both vehicles were positively identified by peculiar physical characteristics as those belonging to Burroughs. We deem this evidence substantial. In fact, the identification of the tractor was so well established that Garrett on appeal has abandoned his claim thereto.

Presently there is no dispute as to the ownership of the grain. The grain was delivered to King before trial of other issues; nevertheless, King has pursued the matter, seeking both actual and punitive damages by reason of the alleged unlawful detention by Burroughs. King was awarded actual damages in amount of $498.10 but was denied punitive damages. Burroughs appeals from the award, and King cross-appeals, claiming the court not only erred in denying punitive damages but erred in arbitrarily reducing the amount of the actual damages proven at the trial. The items for which damages were awarded are:

"Cost of unloading and reloading grain, 49,240 lbs. at 10¢ per cwt. $ 49.24

Hauling grain from Portales, New Mexico to Ft. Sumner, New Mexico, 49,240 lbs. at 15¢ per cwt. 73.86

Liability of Intervenor to consignee of grain by reason of non-delivery 250.00

Time spent by H. D. King, president of Intervenor corporation in recovering grain 75.00

Time spent by Harold Book, employee of Intervenor, in recovering grain 50.00"

We will dispose of the contention between Burroughs and King by saying that we find no basis for the awarding of either actual or punitive damages, except the item of expense in returning the grain to Fort Sumner. In the situation confronting Burroughs, his sole duty was to properly care for the grain and to exercise reasonable diligence in ascertaining the owner. In this regard, we review the facts further. The sheriff levied on the tractor and trailer on January 7, 1959 in Fort Sumner. Instead of storing the grain locally, it was brought to Portales. On January 14, 1959, Garrett answered, alleging ownership of the unit but said nothing about the grain. On January 16, 1959, Burroughs propounded an interrogatory to him for the purpose of determining the ownership of the grain. Meanwhile King's demand for possession was refused. On January 21, 1959, Garrett answered the interrogatory further asserting ownership of the tractor and trailer

but stated the grain belonged to King. King had intervened the following day, claiming the grain and seeking damages. On January 31, 1959, Burroughs denied the claims of both Garrett and King, and asked the court to determine the ownership of the grain. A summary hearing was held relating to the grain only, and, on January 31, 1959, the court ordered the grain returned to King without prejudice to King's right to further pursue the claim for damages. It should be noted King sought damages of $7,000 for the alleged unlawful detention.

We think the record discloses that Burroughs fully discharged the duty imposed on him except as previously stated. The retention, under the circumstances, does not constitute conversion, as he was entitled to retain the grain for a reasonable time after demand for the purpose of enabling him to ascertain the true owner.

At 89 C.J.S. Trover and Conversion § 51, the rule is stated thusly:

"A bona fide reasonable detention of goods by one who has assumed, or is charged with, some duty with respect to them, for the purpose of ascertaining their true ownership or of determining the right of demandant to receive them, will not sustain an action for conversion."

The authorities on this subject are assembled at 61 A.L.R. p. 625 and 129 A.L.R. p. 644.

At 53 Am.Jur. (Trover and Conversion) § 46, the rule is otherwise stated:

"Circumstances causing a reasonable apprehension of the consequences of a surrender of goods may be sufficient to prevent a detention, a failure to deliver, or a refusal to surrender possession from constituting a conversion. This rule has been held applicable where the person in possession of the property is willing to give it up on being exonerated. In any event, the decisions support the rule that where chattels are withheld from the true owner or his agent for a reasonable time after demand, for the purpose of enabling the holder to determine who has the right to possession, the detention is reasonable, and does not constitute a conversion. * * *"

In Obodov v. Foster, 105 Colo. 254, 97 P.2d 426, 428, the court had this to say:

"We are inclined to believe that this pronouncement, as it related to the actions of the receiver prior to May 28, 1934, was substantially correct. The statements made to plaintiff by the receiver and his attorney prior to that time were in the nature of qualified refusals. When refusals are not absolute, but are qualified by certain conditions which are reasonable, and which are imposed in good faith and in recognition of the rights of plain-

riff, such refusals are an insufficient basis for an action in conversion. * * *"

We now come to the claim of the intervenors Wallen and Royal Tire. The trial court found that Garrett had obtained the tractor and trailer and had agreed with Burroughs that after making one trip to California he would return them to Burroughs but "he has withheld possession * * * at all times since such agreement was made." The court stated in conclusion No. 4 that Garrett had "wrongfully detained" this possession. In addition, he found that the tires, tubes and wheels were placed on the equipment without Burroughs' knowledge or consent; that the sale by Wallen was "on open account" knowing at the time that Garrett was not the owner thereof and that the sale by Royal Tire was by an instrument in writing but not acknowledged by either the buyer or the seller. All of these findings have substantial support in the evidence.

The situation here is different from the ordinary one where "tires and tubes sold under a conditional sales agreement and placed on an automobile held under a similar contract do not become a part of the vehicle under principles of accession so as to give the conditional vendor of the vehicle a right thereto as against the conditional vendor of the tires upon repossessing the vehicle for default of the conditional ven-

dee." Mossler Acceptance Co. v. Norton Tire Co., Fla., 70 So.2d 360, 43 A.L.R.2d 810.

The resolution of the problem here presented would be relatively simple if these transactions had occurred in New Mexico because neither the sale by Wallen nor the one by Royal Tire was under a valid title retention agreement under New Mexico law. Allison v. Niehaus, 44 N.M. 342, 102 P.2d 659. However, this may not have been true in Texas which would be controlling. Hart v. Oliver Farm Equip. Sales Co., 37 N.M. 267, 21 P.2d 196, 87 A.L.R. 962. Whether or not it was true, we are convinced that the rights of Wallen and Royal Tire under Texas law were no greater than their rights would have been had they been dealing with one who had stolen the tractor and trailer.

The note writer in 43 A.L.R.2d 826, states:

"The courts have uniformly recognized the principle that possession of an automobile by a thief is a continuing wrong, and if the wrongdoer adds new parts, the property in its enhanced value or changed condition still belongs to the original owner, who may retake it with the accessions thereto." The case of Ochoa v. Rogers, Tex.Civ.App. 1921, 234 S.W. 693, is cited in connection therewith.

Of course, Garrett was not a thief, having acquired possession of the tractor and

trailer legally, but he was a wrongdoer in that he "wrongfully detained" possession or in other words, converted to his own use. As a matter of fact, under the law of Texas this is a criminal offense. See Lee v. State, 1917, 81 Tex.Cr.R. 117, 193 S.W. 313, 316, wherein the court said:

"* * * where property of one person was obtained by another by contract of hiring or borrowing, or other bailment, and such person, while having possession, should fraudulently convert it to his own use, he should be held to be guilty of theft of such property. It has been frequently held by this court that this statute covered every character of bailment, except one for the exclusive use and benefit of the bailor."

This would still appear to be the law of Texas. See Allen v. State, Tex.Cr.App. 1957, 301 S.W.2d 915, 917.

Thus it appears that Garrett would be guilty of theft by bailee, and it would be our view that Burroughs, the owner, being entitled to possession, was entitled to the tractor and trailer in their enhanced or changed condition, just as he would have been if the tractor and trailer had been stolen.

We conclude accordingly that Burroughs, having acquired the possession of the tires, tubes and wheels in his replevin action against Garrett, the wrongdoer, is entitled to retain them as against Wallen and Royal Tire who dealt with Garrett.

The cause is remanded with directions to the lower court to enter an order vacating the award of damages to King except the amount of $73.86. In all other respects the judgment is affirmed with directions to enter judgment against appellants and the sureties upon their supersedeas bond.

It is so ordered.

McGHEE, C. J., CARMODY and MOISE, JJ., and JOHN R. BRAND, D. J., concur.