689 P.2d 939

**Pierre STEPHEN, Plaintiff-Appellant,**

**v.**

**Felix S. PHILLIPS and Stella S. Phillips, his wife, and Tony Srader, Defendants-Appellees.**

**No. 7516.**

Court of Appeals of New Mexico.

Sept. 25, 1984.

Nancy Augustus, Singleton Law Offices, Santa Fe, for plaintiff-appellant.

Perry C. Abernethy, Franklin, Dunn & Abernethy, Albuquerque, for defendant-appellee Stella S. Phillips.

## OPINION

WOOD, Judge.

Defendants[1] sold scrap metal, motors, small tools and implements, three vehicles and other items accumulated at defendants' welding shop (referred to hereinafter as scrap metal) for $6,000. The sales price was paid. This lawsuit resulted from a dispute over who was entitled to take possession of the scrap metal that was sold. Plaintiff sued defendants for fraud, constructive fraud and conversion. The trial court found in favor of defendants on these issues. The trial court also found there had been an accord and satisfaction. Plaintiff appealed. We (1) outline the factual background; (2) discuss plaintiff's right to sue for conversion; (3) discuss the conversion issue; and (4) modify the trial court's judgment because one of the defendants is dead.

**Factual Background**

The following factual recitation is based on unchallenged findings or undisputed evidence.

Prior to sale of the scrap metal, plaintiff, Srader and Pease inspected and made a list of the scrap metal. On April 1, 1978, defendants agreed to sell the scrap metal to Srader for $6,000. On April 1, 1978, Srader delivered to defendants a check for $1,000 as a down payment. This check was signed by plaintiff and was drawn on plaintiff's bank account. On April 3, 1978, Srader delivered to defendants a cashier's check for $5,000 to complete payment of the purchase price. The cashier's check was purchased by plaintiff.

On April 3, 1978, Srader was the only purchaser of the scrap metal, and the bill of sale showed only Srader as the buyer. Plaintiff and Pease demanded that their names be included on the bill of sale as buyers. On April 3, 1978, the bill of sale was amended to show plaintiff, Srader and Pease as the buyers. All involved consented to this amendment.

On or before April 3, 1978, plaintiff, Srader and Pease entered an oral partnership agreement to purchase the scrap metal. Defendants became aware of the partnership on April 3, 1978.

On April 4, 1978, Srader removed $2,000 worth of scrap metal from defendants' property. On April 5, 1978, plaintiff and Srader, as partners, disputed which of them owned and had a right to possess the scrap metal that had been purchased. Defendants became aware of this dispute on April 5, 1978. Plaintiff demanded that defendants allow him to remove the scrap metal. Srader demanded that defendants allow him to remove the scrap metal. Defendants refused to allow either plaintiff or Srader to remove the property for some months.

---

1. By defendants, we mean the two Phillips defendants. Plaintiff also sued Srader, but the claims against Srader were not tried, and the record on appeal indicates the claims against Srader are pending in the trial court.

### Plaintiff's Right to Sue for Conversion

■ The trial court found, after trial, that there was a partnership. Plaintiff does not challenge this finding on appeal. Plaintiff does not challenge the trial court's ruling that there was neither fraud nor constructive fraud. Plaintiff does challenge the ruling that plaintiff failed to prove a conversion.

In attacking the trial court's ruling as to conversion, plaintiff relies on partnership law. Plaintiff asserts that as a partner he had a right to possession of the scrap metal because it was partnership property. The answer brief responds that plaintiff's partnership claim is improper because plaintiff, as a partner, "may not sue alone on a cause of action belonging to the partnership * *." The answer brief cites *Loucks v. Albuquerque National Bank*, 76 N.M. 735, 418 P.2d 191 (1966), and *Amador v. Lara*, 93 N.M. 571, 603 P.2d 310 (Ct.App.1979). Thus in responding to plaintiff's appellate argument, the answer brief raises an issue as to whether plaintiff, as an individual, had the right to sue on a partnership claim.

The tenor of plaintiff's complaint and his amended complaint was that he put up the money, he was the buyer of the scrap metal, he was entitled to possession of the scrap metal and he, individually, was entitled to damages. The amended complaint alleged that "Plaintiff was the rightful owner * * *." No claim on behalf of the partnership was asserted in either the complaint or amended complaint.

At trial plaintiff testified consistent with the theory pleaded. He testified that he owned the scrap metal, that he was the buyer, "I was the only buyer, the sole buyer." Plaintiff also testified in contradiction to his view that he was the sole buyer. He admitted that there was a partnership consisting of himself, Srader and Pease, and admitted that he had acknowledged the partnership to defendants. Plaintiff testified that among the partners, Pease, a blacksmith, was to make things with the scrap metal, plaintiff was to provide the money and Srader "was the agent

to buy and to sell, you know, he was acting as an agent."

In his requested findings, plaintiff limited his partnership theory. The theory was that Srader and Pease were "future partners who would have a share in any profits made in re-selling the merchandise. These two men were not indentified [sic] in any way as being purchasers of the merchandise." The trial testimony, including the testimony of plaintiff, provided a basis for the trial court to refuse this requested finding.

We refer to the above evidence again in deciding the conversion issue. At this point our concern is whether plaintiff was a proper party to seek damages on behalf of the partnership for conversion.

Plaintiff's reply brief asserts that defendants did not raise a defense in the answer as to plaintiff's capacity to sue "so as to give Mr. Stephen the opportunity to amend his complaint, [as] defendant should not now be heard to deny Mr. Stephen's capacity to sue." This contention, in essence, is that any question as to capacity to sue has been waived. *See* NMSA 1978, Civ.P.R. 9(a) (Repl.Pamp.1980).

It is unnecessary to decide the waiver contention. The evidence is undisputed that prior to trial Srader assigned his partnership interest to plaintiff, excepting only certain of the scrap metal that had been obtained by Srader, while he was a partner. Documents among the exhibits, although denied admission in this case, are to the effect that Pease no longer has a partnership interest and no one claims that he does. In these circumstances, plaintiff, as the holder of the partnership interest, was a proper plaintiff. *See Sturgeon v. Clark*, 69 N.M. 132, 364 P.2d 757 (1961); *Young v. New Mexico Broadcasting Co.*, 60 N.M. 475, 292 P.2d 776 (1956), *modified on other grounds* in *Reed v. Melnick*, 81 N.M. 608, 611, 471 P.2d 178 (1970).

### Conversion

The conversion claim on appeal is that plaintiff, as a partner, had a right to control and manage the scrap metal as partnership property. The challenge to the tri-

al court's holding as to the conversion claim is argued in two parts. One part attacks the propriety of defendants' action in withholding delivery to plaintiff after learning that the plaintiff and Srader disagreed as to which of them was entitled to possess the scrap metal. This first part involves the "reasonableness" of defendants' action, *see Burroughs v. Garrett*, 67 N.M. 66, 352 P.2d 644 (1960), and the rather startling claim that defendants were liable for conversion because *defendants* did not file a lawsuit to resolve the conflicting claims of the disputing partners. It is unnecessary to discuss or decide the contentions involving the conduct of defendants.

■ The second part of the conversion claim involves plaintiff's right to recover for conversion. Plaintiff could not recover damages for conversion unless he had a right to immediate possession of the scrap metal. Such a right is generally based on some form of ownership interest. *See Wray v. Pennington*, 62 N.M. 203, 307 P.2d 536 (1956); 89 C.J.S. *Trover & Conversion* §§ 72–73 (1955); *cf. Aragon v. General Electric Credit Corp.*, 89 N.M. 723, 557 P.2d 572 (Ct.App.1976); *O'Dell v. Garrett*, 82 N.M. 240, 478 P.2d 568 (Ct. App.1970).

■ Plaintiff asserts he had a right to immediate possession as a partner. He relies on the following provisions of the Uniform Partnership Act.

NMSA 1978, Section 54–1–9(A) provides:

A. Every partner is *an agent of the partnership for the purpose of its business*, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority. (Emphasis added.)

NMSA 1978, Section 54–1–25 provides:

A. A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership.

B. The incidents of this tenancy are such that:

(1) a partner, subject to the provisions of this act [54–1–1 to 54–1–43 NMSA 1978] and to any agreement between the partners, has an *equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners * * *.* (Emphasis added.)

Plaintiff states:

As long as Mr. Stephen was using the scrap metal for partnership purposes, he was entitled to access to the property. There is no allegation in the record that Mr. Stephen was endeavoring to obtain the scrap for any purpose other than to resell it, which was the purpose for which the partnership was formed. * * Because Mr. Stephen was engaged in a legitimate partnership enterprise, he had the right to manage the partnership property and the defendant was under a contractual obligation to deliver the goods to him.

Plaintiff's contention is a fiction. Plaintiff did not seek damages on behalf of the partnership. In the trial court he denied any partnership interest in the scrap metal. Plaintiff claimed that he was the sole buyer, and that the partnership involved only the sale of property that plaintiff owned individually. See the review of the evidence in our discussion of the "proper party" issue. Under the evidence, particularly plaintiff's own testimony, plaintiff did not seek possession of the scrap metal for partnership purposes. Rather, plaintiff sought to possess the scrap metal for other purposes without the consent of his partners. Under Section 54–1–25(A), plaintiff's ownership interest was that of a tenant in partnership. Under Section 54–1–25(B)(1), he had no right to possession.

Plaintiff was not entitled to individual damages for conversion, and he did not

assert, in the trial court, a claim to possession on behalf of the partnership. The trial court properly dismissed the conversion claim with prejudice.

**Modification of Judgment Because of a Deceased Defendant**

■ Although plaintiff's brief-in-chief attacks the trial court's finding of an accord and satisfaction, the reply brief states: "If the Court rejects plaintiff's point that the [trial] court was in error in [its] decision that plaintiff failed to prove his case then, the issue of accord and satisfaction need not be reached." There being no cross-appeal, we accede to plaintiff's request and do not consider the merits of the finding that there was an accord and satisfaction.

We do, however, consider the judgment based on the accord and satisfaction because the judgment provides that defendants pay plaintiff pursuant to the accord and satisfaction. One of the defendants died prior to trial.

The complaint was filed April 10, 1981; the amended complaint was filed May 7, 1981. Answers were filed by both defendants on July 17 and 20, 1981. Stella Phillips testified that Felix died in March 1982; that she was the "executrix" of Felix' estate and handled the settlement of his estate.

Plaintiff filed a suggestion of death on November 24, 1982, serving Stella Phillips "acting pro se." There has been no motion for substitution of parties. We do not, however, dismiss the suit against Felix under NMSA 1978, Civ.P. Rule 25(a) (Repl. Pamp.1980) because there is nothing indicating that the suggestion of death was served on a representative of Felix' estate. See the wording of Civ.P. Rule 25(a).

We dispose of the question of Felix' death, while a party, pursuant to our revivor statutes. NMSA 1978, Section 37–2–1 provides that causes of action for fraud and injury to personal estate survive. Plaintiff's claims for fraud, constructive fraud and conversion survived Felix' death. *See A.J. Armstrong Co. v. Hufstedler,* 75 N.M. 408, 405 P.2d 411 (1965). Plaintiff's claims against Felix could have been revived against Felix' personal representative. NMSA 1978, § 37–2–11. "[A] pending action cannot be prosecuted after the death of a party defendant thereto, so as to affect the decedent's estate, until it is revived against his personal representative or successor in interest." *A.J. Armstrong Co.,* 75 N.M. at 410, 405 P.2d 411. As to the claims against Felix, his personal representative became an indispensable party. There having been no revivor against Felix' personal representative, plaintiff's claims against Felix must be dismissed and the provision in the judgment requiring Felix to pay pursuant to the accord and satisfaction must be modified. *A.J. Armstrong Co.*

There is nothing suggesting plaintiff's claims against Stella could not be pursued. NMSA 1978, § 37–2–5.

The judgment dismissing plaintiff's claims against Stella and requiring Stella to pay pursuant to the accord and satisfaction is affirmed. The provisions of the judgment pertaining to Felix are reversed. The cause is remanded with instructions to dismiss plaintiff's claims against Felix, and to delete from the judgment the provision requiring Felix to pay pursuant to the accord and satisfaction.

Plaintiff is to bear the appellate costs.

**IT IS SO ORDERED.**

DONNELLY, C.J., and HENDLEY, J., concur.