In re TIP O TEXAS RV VILLAGE, Debtor.

In re P.C. RESORTS, Debtor.

In re FLORIDAN PARTNERS, LTD., Debtor.

In re TROPIC STAR PARK, Debtor.

Bankruptcy Nos. 87–7114–BKC–8B1 to 87–7116–BKC–8B1 and 87–7118–BKC–8B1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

June 3, 1988.

Harley Riedel, Tampa, Fla., for Amerivest Corp.

Francis Cobb, Thomas Long, Tampa, Fla., for Stephen Weis.

Shirley Arcuri, Tampa, Fla., for Tropic Star Park.

Thomas Mimms, Tampa, Fla., for John Fowler.

Dennis Ferguson, Tampa, Fla., co-counsel for Gordon Comer & Amerivest Corp.

Charles Ketchey, Tampa, Fla., for Logan Browning.

### ORDER ON WEIS' MOTION TO DISMISS INVOLUNTARY PETITION

THOMAS E. BAYNES, Bankruptcy Judge.

THIS CAUSE came on to be heard upon the Motion to Dismiss filed by Stephen Weis as general partner of the four limited partnership involuntary Debtors, Tip O Texas RV Village, P.C. Resorts, Floridan Partners, and Tropic Star Park. The sole basis for dismissal is the alleged lack of standing of the petitioning partner to file these involuntary cases under 11 U.S.C. § 303. After hearing argument of counsel, reviewing the record, and memorandum of law, and being otherwise fully advised in the premises, the Court finds:

Two of the Debtors are Florida limited partnerships; Floridan Partners and P.C. Resorts, f/k/a Port O' Call RV Resort. The two others are Texas limited partnerships, Tip O Texas RV Village and Tropic Star Park. In 1987, a partnership agreement was executed by Stephen Weis and Gordon Comer as general partners of Floridan Partners. A certificate of limited partnership for Floridan Partners was filed with the Secretary of State for the State of Florida. Similarly, a limited partnership agreement between Weis and Comer as general partners was filed as to P.C. Resorts in 1987. As to Tropic Star and Tip O' Texas, similar agreements were executed and certificates of limited partnerships for each were filed in 1986 with the Secretary of State of Texas, listing Weis and Comer as the general partners. It is uncontroverted both Weis and Comer were general partners of the four limited partnership involuntary Debtors.

In August 1987, Mr. Comer executed as to each of these limited partnership agreements a document which is styled "Assignment, Agreement and Amendment to Certificate and Limited Partnership Agreement." It appears each of these assignments were executed in August 1987, but were not filed with the respective secretaries of state until December 1987, just prior to filing of the involuntary petitions in each case. Each of these assignments stated:

The undersigned in his capacity as general partner under that certificate and limited partnership agreement for Floridan Partners, Ltd., a Florida limited partner-

ship, hereby assign my Thirty-three and One Third per cent (33⅓%) general partnership in the aforementioned partnership to AMERIVEST CORPORATION, a Florida Corporation.

The consideration for said Thirty-three and One Third per cent (33⅓%) general partnership interest is $10.00 and other consideration.

Said Thirty-three and One Third (33⅓%) of the limited partnership was all of that general partnership interest in the name of Gordon Comer.

Each assignment lists the respective limited partnership name, and Gordon Comer's percentage of ownership. However, these assignments are all signed and witnessed by Gordon Comer, individually, as assignor and Gordon Comer as president of Amerivest Corporation, assignee. It is uncontested that Gordon Comer is the sole owner and officer of Amerivest Corporation (Amerivest), a Florida corporation.

On December 31, 1987, Amerivest, alleging to be a general partner of each of the limited partnerships, and Gordon Comer as a former general partner of these Debtors, filed an involuntary petition as to each one of these limited partnerships in the Middle District of Florida. Said petitions was signed by Gordon Comer, individually, and as President of Amerivest Corporation. Subsequently, Amerivest on January 7, 1988, filed its Voluntary Petition for Relief under Chapter 11.

Florida has adopted its own form of the Uniform Limited Partnership Act. Effective January 1, 1987, Florida Statute 620.-152 deals with the assignment of partnership interests. It generally provides that unless the partnership agreement states otherwise, a partnership interest can be assigned, but said assignment does not entitle "the Assignee to become or to exercise any rights or powers of a partner." The Assignee is only entitled to share in the profits and losses and to receive such other distribution. The assigning partner "ceases to be a partner and to have the power to exercise any rights or powers of a partner upon the assignment of all of his partnership interest." Fla.Stat. 620.152 (1988)

■ The Court finds the Assignment, Agreement and Amendment Certificate and Limited Partnership Agreement, was a complete assignment of Mr. Comer's interest as to the Florida limited partnerships, Floridan Partners, Ltd., and P.C. Resorts, formerly known as Port O Call RV Resort. *See* generally, *Benton v. Albuquerque National Bank,* 103 N.M. 5, 701 P.2d 1025 (Ct.App.1985). Neither Mr. Comer as assignor, nor Amerivest as assignee of Mr. Comer's interest in the limited partnership have standing under Section 303(b)(3) of the Bankruptcy Code to file the involuntary petition as to Floridan Partners or P.C. Resorts, Florida limited partnerships. There is nothing in the limited partnership agreements of these two Debtors which would prevent Mr. Comer from assigning his interest to Amerivest. There is nothing in these agreements to preserve the power to exercise any rights of a partner other than to receive a right to distribution.

■ Mr. Comer and Amerivest argue Comer's assignment to Amerivest was valid. There is no doubt the partnership agreement allowed such assignment. Next, they argue consent is not necessary by other partners or the partnership to entitle Amerivest to participate as a full general partner because Amerivest is merely a substitute for Defendant Comer in the Corporate form. The Court rejects this argument. There is a major distinction between an individual and corporate entity as recognized by law. The liabilities clearly would shift to insulate Mr. Comer and enlarge the risk to the remaining general partners if Florida law was considered to allow such mere substitutions. Clearly, Florida law would not allow this result. *Matter of Dutch Inn of Orlando, Ltd.,* 2 B.R. 268 (Bankr.M.D.Fla.1980).

■ Without the consent of Mr. Weis as general partner, Amerivest cannot be a full partner of any of the Debtors. The Texas partnership statute, Tex.Rev.Civ. Stat.Ann. Art. 6132b, Section 18(1)(g), et al (Vernon 1970), is consistent with Florida law. See, *Thomas v. American National Bank,* 704 S.W.2d 321 (Tex.1986). The

Court finds the assignment made by Gordon Comer as general partner of Tip O Texas RV Village, a Texas limited partnership, and Tropic Star, a Texas limited partnership, to Amerivest was a complete assignment of all of Mr. Comer's rights in the respective Texas limited partnerships. Therefore, under Texas law, neither Mr. Comer nor the assignee, Amerivest had standing to file an involuntary petition as to the Texas limited partnership Debtors.

Upon review of numerous decisions and statutes concerning partnership law, the assignee-successor partner has no managerial authority or power in the partnership operation without the consent of the remaining partners. See *In re Sunset Developers*, 69 B.R. 710 (Bankr.Ida.1987); *Zoltanski v. Akst (In re Zyndorf)*, 80 B.R. 876 (Bankr.N.D.Ohio 1987); *Thomas v. Price*, 631 F.Supp. 114 (S.D.N.Y.1986) (construing Texas law); *Benton v. Albuquerque National Bank*, 103 N.M. 5, 701 P.2d 1025 (Ct.App.1985); *Wester & Co. v. Nestle*, 669 P.2d 1046 (Colo.Ct.App., 1983); *Rapoport v. 55 Perry Co.*, 50 A.D.2d 54, 376 N.Y.S.2d 147 (1st Dept.1975).

The Court notes that Paragraph 24 of the Limited Partnership Agreement provides for a termination and dissolution of the partnership upon the bankruptcy of general partners. Paragraph 21(b) provides for termination of the partnership upon the death, insanity, resignation or termination of the general partners. If "general partners" was construed in the singular, Paragraph 30 of the agreements, then an unknown, unconsented assignee general partner, such as Amerivest, might control by its unilateral acts the existence of any of the limited partnerships. Fla.Stat. 620.-157(2) (1988). Clearly, the policy enunciated in general partnership law, both in Florida and in Texas, constrains the power of incoming assignee partners in order to protect the partnership and unsuspecting partners from calamity. If assignments of partners' management rights were allowed, without express language or consent, any limited partnership could be dissolved and the authority of the remaining partners subverted. *See, In re Safren*, 65 B.R. 566 (Bankr.C.D.Cal.1986); *In re Minton Group, Inc.*, 27 B.R. 385 (Bankr.S.D.N.Y. 1983), *aff'd*, 46 B.R. 222 (S.D.N.Y.1985); *C P Yorketown, Inc. v. Fidelity America Mortgage Co., (In re Fidelity America Mortgage Co.)*, 10 B.R. 781 (Bankr.E.D.Pa. 1981); *Skeen v. Harms (In re Harms)*, 10 B.R. 817 (Bankr.Colo.1981).

It is quite clear the policy of preserving the partnership as expressed in Florida and Texas general partnership law permits an assignment of a partnership interest, limited to a share in the profits. An exception to the assignment of a managerial right by the assignment of a partnership interest may only be based on an intent expressed in documents executed by the partners related to the partnership activity and coupled with the continuity of the partnership. *Thomas v. Price, supra.* An additional exception may be implied where the assigning partner assumes control of the operation of the partnership. While there is some evidence that subsequent to Mr. Comer's assignment to Amerivest, Comer continued to operate and manage the limited partnership facilities. His acts were consistent with his general partnership role and agreement with the partnership and with general partner Weis. Since the assignment to Amerivest was hidden from the other partners, it cannot be found they consented to or acquiesed to Amerivest, Comer's corporate shadow operation. There is no evidence Amerivest performed any duties as general partner from which knowledge or consent by general partner Weis or others could be inferred. *See, Zyndorf, supra.*

■ Amerivest, now being a Chapter 11 Debtor-in-Possession, has no authority to manage the four involuntary limited partnership Debtors. Tex.Rev.Civ.Stat.Ann., Art. 6132b (Vernon 1970), Fla.Stat. 620.152 (1988). *See, Harbor Pointe Office Park, Ltd, I v. Prudential National Assurance Co., (In re Harbor Pointe Office Park, Ltd., I )*, 83 B.R. 44 (Bankr.D.Colo.1988).

Since the filing of general partner Weis' Motion to Dismiss, other parties claiming to be creditors have sought to join in the involuntary petitions under Section 303(c)

of the Bankruptcy Code. Therefore, the involuntary case cannot be dismissed at this time. *See, Petralex Stainless, Ltd. v. Bishop Tube Division of Christiana Metals (In re Petralex Stainless Ltd.),* 78 B.R. 738 (Bankr.E.D.Pa.1987); *In re Elsub Corp.,* 66 B.R. 172 (Bankr.N.J.1986); *In re Rush,* 10 B.R. 526 (Bankr.N.D.Ala.1981).

Under Rule 1003(b), Rule 1004(b), Rule 1010, Rule 1011 and pursuant to Section 303(d), (e) and (j), the Court directs the clerk to immediately issue summons as to each creditor which has sought to join in each involuntary case and have said summons and Joinder pleadings served upon Gordon Comer, Stephen Weis, Amerivest Corporation, any receiver/custodian and any such other general partners of the four limited partnership Debtors.

Further, the clerk shall give notice to any and all parties of interest, U.S. Trustee, or other creditors shown in these involuntary cases or any adversary proceeding associated with these general cases advising those parties this Court sets June 15, 1988, as the date by which must be filed any joinder in the involuntary petition of any or all of the limited partnership Debtors herein. It is further

ORDERED, ADJUDGED AND DECREED that the Debtors, general partners, or other parties in interest as provided in the Bankruptcy Code and Bankruptcy Rules shall file their responsive pleadings controverting the Joinder Petitions as to parties which have already sought to be joined in the involuntary petitions within twenty (20) days of this Order, and within the time set by the Bankruptcy Rules for any joinder filed subsequent to this Order.

It is further

ORDERED, ADJUDGED AND DECREED that if any party seeks to controvert the joinder in the involuntary petitions in these limited partnership Debtors, a hearing shall be held on July 8, 1988, at 9:00 a.m., upon such motions, and other responsive pleadings. Failure to seek to controvert such joinder, will allow orders for relief regarding each respective Debtor to be entered by this Court as provided by the Bankruptcy Code.