800 P.2d 731

**REYNA FINANCIAL CORPORATION, Plaintiff,**

v.

**ART JANPOL VOLKSWAGEN, INC., Defendant and Third–Party Plaintiff–Appellee,**

v.

**ZMHC, INC., A New Mexico Corporation, Third–Party Defendant–Appellant.**

No. 18945.

Supreme Court of New Mexico.

Nov. 5, 1990.

Dubois, Caffrey, Cooksey, Bischoff & Dickson, Janelle Stamper, Albuquerque, for third-party defendant-appellant.

William F. Aldridge, Albuquerque, for defendant and third-party plaintiff-appellee.

## OPINION

SOSA, Chief Justice.

Third-party defendant-appellant, ZMHC, appeals summary judgment in favor of defendant, third-party plaintiff-appellee, Art Janpol Volkswagen, Inc. (Janpol). The trial court ruled that there was no material issue of fact as to ZMHC's assumption of a lease entered into between Janpol as lessee and Reyna Financial Corporation (Reyna) as lessor. Reyna was granted summary judgment in its suit against Janpol to collect the outstanding balance due on the lease of $8,145.36. Janpol's motion for summary judgment against ZMHC was

premised on the contention that ZMHC had assumed the Reyna Lease. The court agreed with Janpol and awarded Janpol judgment against ZMHC in the sum of $9,233.36, which included the balance due on the lease plus attorney's fees and costs. Reyna is not a party to this appeal. We reverse.

## FACTS

ZMHC agreed to purchase certain assets of Janpol for $2,950,000. The parties executed a purchase agreement that provided, in pertinent part, as follows:

> 2. *Leases and Contracts.* If any leases or contracts are presently in existence between [Janpol] and any third party with regard to the operation of the Business, copies of those leases are attached hereto, or those leases and contracts shall be listed in Exhibit "C" which is attached to and incorporated in this agreement by [Janpol], and after approval by [ZMHC]. [ZMHC] shall assume all such leases or contracts. Within fifteen (15) additional days following the preparation of Exhibit "C" by [Janpol], [ZMHC] shall give [Janpol] written notice as to which, if any, of the leases and contracts that [ZMHC] wishes to assume with regard to its purchase of the Business.

Neither copies of leases nor an Exhibit "C" was attached to the purchase agreement. Nor did Janpol subsequently prepare an Exhibit "C" and give it to ZMHC.

On December 11, 1986, the parties met to close their buy-sale agreement. They selected Stewart Title Company (Stewart) to handle the closing. Stewart insisted that Janpol and ZMHC execute in favor of Stewart a hold-harmless agreement in which Stewart was relieved of "any liability and/or damages resulting from any problem or dispute arising from the assumption of Reyna lease." The ZMHC–Stewart agreement provided, "ZMHC does hereby agree to assume Reyna lease from Janpol outside of closing." The Janpol–Stewart agreement provided, "Janpol does hereby agree that Reyna lease is to be assumed by ZMHC outside of closing."

On the same day that the Stewart agreements were executed, Janpol delivered to ZMHC a bill of sale that provided, in pertinent part, that the following equipment would be delivered to ZMHC:

> *Computer–Room*
>
> postage meter, computer VIM net 9000 terminals, programs, chairs, files[.]

The equipment which Reyna had leased to Janpol is described as follows:

> VIM net model 9200 including software licenses for accounting, payroll, parts inventory, parts invoicing accounts payable. Four (4) televideo 905, three TJ. 820 terminals, cables, tapes, and telephone modem[.]

## ISSUES ON APPEAL

■ We note at the outset that the only contract between Janpol and ZMHC is the purchase agreement from which we have quoted above. By the terms of that contract, Janpol was to provide ZMHC with a list of leases and contracts that ZMHC was to assume. Janpol failed to provide ZMHC with such a list and thus—as between Janpol and ZMHC—there is no enforceable contract by which ZMHC was to assume the Reyna lease, or any lease. While applicable portions of the bill of sale quoted above indicate that ZMHC was purchasing certain computer equipment from Janpol, the bill of sale does not explicitly disclose that the equipment being purchased was identical to that leased by Reyna to Janpol.

■ Even if the bill of sale had unequivocally identified the Reyna equipment, however, that fact in itself would not demonstrate with finality that ZMHC had obligated itself to assume the lease payments owing by Janpol to Reyna. The bill of sale does not serve as a substitute for a properly executed assignment.

> The intent of an assignor is to be gleaned, if possible, from the document itself. The meaning of an assignment is to be determined with reference to the intention of the drafter at the time the agreement was made. ([I]f there is ambiguity, intent may be ascertained by language and conduct of parties, objects

sought to be accomplished by the agreement, and circumstances surrounding execution of the agreement).

*Benton v. Albuquerque Nat'l Bank*, 103 N.M. 5, 10–11, 701 P.2d 1025, 1030–31 (Ct. App.) (citations omitted), *cert. quashed*, 103 N.M. 62, 702 P.2d 1007 (1985).

Here there is no ambiguity in the bill of sale. It does not purport to be an assignment. Even if it did purport to be an assignment, however, there is no indication of ZMHC's acceptance of the "assignment." *See Restatement (Second) of Contracts* § 327 (1979) (ordinarily, a manifestation of assent by an assignee is essential to make an assignment effective). Here, ZMHC's president, in his affidavit submitted in opposition to Janpol's motion for summary judgment, denies that ZMHC ever agreed to assume the Reyna lease. The documentary evidence, without more, does not support the creation of an assignment by Janpol of the Reyna lease to ZMHC.

■ Thus, if Janpol is to prevail, it can do so only on the strength of the Stewart agreements executed by the parties at closing and only if Janpol is a third-party beneficiary of the ZMHC–Stewart agreement. Here the problem for Janpol is twofold. First, the language of the ZMHC–Stewart agreement provides, "ZMHC does hereby agree to assume Reyna lease from Janpol outside of closing." The language of the Janpol–Stewart agreement states that the Reyna lease is *to be* assumed outside of closing. It is obvious that this language refers to action to be taken in the future.

Read in the context of the entire agreement between the parties, the wording means that the parties have agreed to agree to an assumption of the Reyna lease. But an agreement to agree is not itself an assumption. "A contract to make a future assignment of a right * * * is not an assignment." *Id.* § 330. Further, "An express statement in a contract that a party *shall* assign its liability in the future only sets the stage for an assignment; it does not operate as one." *Skandinavia, Inc. v. Cormier*, 128 N.H. 215, 219, 514 A.2d 1250, 1253 (1986).

■ The second problem with Janpol's assertion of third-party beneficiary status is that the Stewart agreements do not show that Janpol is intended by the parties to be such a beneficiary.

> The paramount indicator of third party beneficiary status is a showing that the parties to the contract intended to benefit the third party * * * * Such intent must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary.

*Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 581, 734 P.2d 1258, 1264 (1987) (citation omitted).

Here, the intent of the Stewart agreements as shown by the agreements themselves is to benefit Stewart, not Janpol. Nor is there any other evidence in the record to indicate that the Stewart agreements were entered into in order to benefit Janpol by effectuating assignment of the Janpol–Reyna lease to ZMHC. *See Stotlar v. Hester*, 92 N.M. 26, 29–31, 582 P.2d 403, 406–08 (Ct.App.) (on motion for summary judgment, factual issue was raised as to whether prospective purchaser of real estate was intended beneficiary of appraiser's report when facts did not show that appraiser knew his client intended to benefit prospective purchasers by having appraisal made; summary judgment as to appraiser's liability held improper), *cert. denied*, 92 N.M. 180, 585 P.2d 324 (1978).

Here, the burden of proof was on Janpol to show that it was an intended third-party beneficiary of the Stewart agreements. *See McKinney v. Davis*, 84 N.M. 352, 353, 503 P.2d 332, 333 (1972) (burden of proof on plaintiff to show that he was intended beneficiary). In considering whether Janpol carried its burden when ruling on the motion for summary judgment the court was "obliged to view the pleadings [and] affidavits * * * in the light most favorable to the party opposing the motion." *State v. Intigon Indem. Corp.*, 105 N.M. 611, 612, 735 P.2d 528, 529 (1987), citing *Las Cruces Country Club, Inc. v. City of Las Cruces*, 81 N.M. 387, 467 P.2d 403 (1970).

Our review of the record convinces us that the trial court did not view the pleadings and affidavits in the light most favorable to ZMHC. Even assuming that Janpol established a prima facie case, we conclude that ZMHC has shown at least a reasonable doubt that a genuine issue of fact remains —namely, whether Janpol was an intended beneficiary under the Stewart agreements. Summary judgment was thus improperly granted. *See Savinsky v. Bromley Group, Ltd.,* 106 N.M. 175, 176, 740 P.2d 1159, 1160 (Ct.App.) ("[U]pon making a prima facie showing, the burden then shifts to the opponent who must show at least a reasonable doubt * * * as to the existence of a genuine issue of fact. If such doubt is shown, then summary judgment would be improper"), *cert. denied,* 106 N.M. 174, 740 P.2d 1158 (1987).

For the above reasons summary judgment is reversed and the court is instructed to conduct such further proceedings as are not inconsistent with our opinion.

IT IS SO ORDERED.

BACA and MONTGOMERY, JJ., concur.